PIERRE MICHEL *v.* WHITNEY VALENTINE and another.

Defendants, money brokers, having purchased a treasury note of the United States, at a certain rate, resold it to the plaintiff at a small advance. On previous sales of similar notes to plaintiff, defendants had always refused to guaranty or endorse them, and no such guarantee or endorsement was asked, or expressly give nor refused on this sale. The note being proved to have been cancelled, and put in circulation by one who had stolen it, in an action by plaintiff to recover of defendants the amount paid for it : *Held*, that the latter were bound to refund the amount ; that a vendor is always presumed to guaranty the genuineness of the paper he sells, or that any thing else which he offers is really what he pretends it to be ; and that his liability in this respect, if it can in any case be excluded, can be so only when expressed in the most positive manner.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. This was an action to recover the amount paid by the plaintiff for a treasury note of the United States, purchased of the defendants, money brokers ; payment of the note having been refused, on the ground that it had been cancelled by the government, and put into circulation by persons who had stolen it.

The defendants answered by a general denial. The purchase of the note, as alleged by the plaintiff, was established. It was also proved that one of the defendants had acknowledged that the note had been cancelled.

*Birdsall*, a witness of the defendants, testified, that he was in their employment as a clerk, at the time of the transaction; that the plaintiff had previously purchased two or three other notes from the defendants; that on being asked by the plaintiff, at the time of his previous purchases, whether they would endorse or guaranty the notes, defendants invariably refused, stating that they assumed no responsibility on any of their sales, but merely sold for a brokerage. That, on the morning of the day on which the purchase was made, plaintiff called on the defendants to know whether they had any more treasury notes, and was informed that they had none then, but would have some during the day. That at a later hour, while a person was standing at defendants' counter, offering to sell them a treasury note at two per cent discount, and while they were hesitating whether to purchase at so small a discount, plaintiff came in. That the note was taken by one of the defendants from the person offering it, who stood at one end of the counter, and handed to the plaintiff at the other, who, on being asked, agreed to take it at $1\frac{1}{2}$ per cent discount. That the amount, deducting that discount, was taken from the plaintiff, and handed to the person who offered the note for sale. That defendants only made a half per cent by the transaction; and that a better rate of discount was allowed to the person who offered the note, because defendants had a purchaser for it.

There was a judgment below in favor of the plaintiff. The defendants appealed.

*Morel*, for the plaintiff.

*Kennicott* and *Frazer*, for the appellants.

MARTIN, J. The defendants are appellants from a judgment which condemns them to pay to the plaintiff a sum of money, the price of a treasury note, which they had sold him, it having been refused by the Custom-House, on the ground that it was one of several treasury notes which had been cancelled and stolen. The evidence shows that the plaintiff had been in the

habit of purchasing treasury notes from the defendants, which they refused to guaranty and endorse. The plaintiff having called on them for the purchase of such notes, he was answered that they had not any. Returning afterwards to their office, at a time when one was offered to them for sale, he was informed that they could purchase it, and was asked whether he would take it at a discount of one 1½ per cent. On his answering in the affirmative, the defendants purchased it at a discount two, and sold it to him at 1½.

The general issue was pleaded. The identity of the note was proved, and the refusal of it at the Custom-House. The liability of the defendants as vendors of a cancelled treasury note has been established by a decision of the Commercial Court, affirmed by us. *Night* v. *Loufear,* 7 Rob.

Their counsel has rested their defence on the knowledge which the plaintiff had, that they refused to guaranty or endorse the treasury notes which they sold; the length of time between the sale, and the offer to return the note; the absence of proof of the cancelling of the note; and the knowledge the plaintiff had, that they acted as brokers, selling the property of another.

The court, in our opinion, did not err. A vendor is always presumed to guaranty the genuineness of the paper which he sells ; and that any other thing which he offers, is really what he pretends it to be. His liability in this respect, if it can in any case be excluded, must be so in the most positive manner ; and his exemption cannot be easily admitted. As the length of time relied on, does not enable the defendants to sustain the plea of prescription, it cannot avail. The testimony of Morel establishes the defendants' admission that the note had been cancelled. It is evident that the note became the property of the defendants, on their purchase of it on terms more advantageous to them than those at which the plaintiff acquired it. They did not, therefore, act as brokers in this transaction ; a circumstance which increases their responsibility for the genuineness of the note, and distinguishes it from that of a broker, if it be admitted that the latter is not answerable for the genuineness of the paper he sells.

*Judgment affirmed.*